# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TAISIR JABER, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>GURSTEL LAW FIRM PC and ABSOLUTE RESOLUTIONS INVESTMENTS LLC,<br><br>        Defendants. | Case No.: 20-cv-1410<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Taisir Jaber is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from a consumer transaction.

6. Defendant Gurstel Law Firm, P.C., ("Gurstel") is a law firm with its principal place of business located at 6681 Country Club Dr., Golden Valley, MN 55427.

7. Gurstel is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Gurstel is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Gurstel is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant Absolute Resolutions Investments, LLC ("ARI") is a foreign limited liability company with its principal place of business located at 8000 Norman Center Drive, Suite 350, Bloomington, Minnesota 55437.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) ("As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct

2

Case 2:20-cv-01410-LA   Filed 09/09/20   Page 2 of 15   Document 1

crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019).

13. The primary purpose of a company that purchases and takes assignment of defaulted consumer debts and then subsequently collects them is debt collection. *See, e.g., Barbato*, 916 F.3d at 267; *Mitchell*, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.))

14. ARI's primary business and principal purpose is the collection of consumer debts.

15. ARI's website states:

## Receivables Management Solutions

Founded in 2001, Absolute Resolutions Corporation (ARC) is a receivables management firm exclusively focused on acquiring debt portfolios directly from creditors as a part of the debt recovery lifecycle.

https://absoluteresolutions.com/receivables/.

16. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

3

Case 2:20-cv-01410-LA   Filed 09/09/20   Page 3 of 15   Document 1

17. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

18. ARI is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

19. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

20. The Wisconsin Department of Financial Institutions has likewise observed that merchants and creditors are "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

21. ARI uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

22. A company meeting the definition of a "debt collector" is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are

4

responsible for the actions of those collecting on their behalf) (*citing Pollice*, 225 F.3d at 404-05).

23. ARI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

24. On or about February 4, 2020, Gurstel, acting on ARI's behalf, filed a Small Claims Summons and Complaint in the Milwaukee County Circuit Court against Plaintiff. The case was captioned *Absolute Resolutions Investments, LLC v. Taisir Jaber*, Case No. 2020sc004143, *filed* Feb. 4, 2020 (Wis. Milw. Cnty. Cir. Ct. Sm. Cl.) (the "Small Claims Collection Action").

25. Upon information and belief, Gurstel has filed numerous lawsuits in Wisconsin small claims court against numerous consumers whose accounts ARI purchased, using a standard-form complaint that is modified to include account-level information by either automatic document merge or a non-attorney. A copy of the Summons and Complaint in the Small Claims Collection Action is attached to this Complaint as Exhibit 1 (the "Small Claims Complaint").

26. Exhibit 1 states:

>  **Payment Information**
>
> 
>
> New Balance ........................................................................$1,948.27
> Minimum Payment Due ....................................................$1,948.27
> Past Due Amount ...............................................................$1,948.27
> Payment Due Date ......................................................March 3, 2019
>
> ⓘ **Minimum Payment Warning:** Even if you make no more charges using this card, if you make only the minimum payment each month we estimate you will never pay off the balance shown on this statement because your payment will be less than the interest charged each month.
>
> If you would like information about credit counseling services, call 1-866-486-6322.

. . .

> | Charge Summary | Annual Percentage Rate (APR) | Special Offer or Eligible Purchase APR Expiration Date | Balance Subject to Interest Rate | Days Rate Used | Interest Charge |
> |---|---|---|---|---|---|
> | Purchases | 0.00% | N/A | $1,948.27 | 31 | $0.00 |
> | Cash Advance | 0.00% | N/A | $0.00 | 31 | $0.00 |
>
> Your Annual Percentage Rate (APR) is the annual interest rate on your account. (v) Variable Rate  (f) Fixed Rate

27. The representation in the account statement appended to the Small Claims Complaint that "[e]ven if you make no more charges using this card, if you make only the minimum payment each month we estimate you will never pay off the balance shown on this statement because your payment will be less than the interest charged each month" plainly contradicts the representation that the "Annual Percentage Rate (APR)" was "0.00%," and inherently false and misleading to the unsophisticated consumer.

28. Further, the "Minimum Payment Due" stated in the account statement appended to the Small Claims Complaint that the "Minimum Payment Due" is $1,948.27—*the same*

6

*amount* as the "New Balance." Thus, the representation in the account statement that "if you make only the minimum payment each month we estimate that you will never pay off the balance shown on this statement" effectively informs the consumer that there is no way to pay off the debt.

29. As the purported assignee of the original creditor, ARI is tasked with the original creditor's knowledge and may be called to respond for the original creditor's false statements to Wisconsin consumers. *See* Wis. Stat. § 422.407.

30. The representation in the Small Claims Complaint that the debt was incurring so much interest as of the date of the account statement appended to the Small Claims Complaint was mailed, implies to the unsophisticated consumer that Defendants are giving the consumer a "break" by waiving interest to which they were never entitled in the first place.

31. Upon information and belief, no attorney at Gurstel meaningfully reviewed Plaintiff's account or the Small Claims Complaint prior to the filing of the Small Claims Collection Action. *See Schwoegler v. Reviver Fin. LLC*, No. 18-cv-287-jdp, 2019 U.S. Dist. LEXIS 216704, at *6-7 (W.D. Wis. Dec. 13, 2019). If an attorney had meaningfully reviewed the account and the Small Claims Complaint, they would have realized that the account statements appended to the Small Claims Complaint included false and misleading account information that would put ARI at risk of countersuit and would have either: (i) not filed suit at all, or (ii) amended the form complaint to address the issues implicated by the false and contradictory representations therein.

32. Plaintiff was misled and confused by Exhibit 1.

33. Plaintiff suffered harm as a result of Exhibit 1, including confusion and anxiety.

34. An unsophisticated consumer would be misled and confused by Exhibit 1.

### *The FDCPA*

35. The FDCPA creates both substantive and procedural rights for consumers, and violations of those rights risk harm to concrete interests that the FDCPA protects. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest

that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

36. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

37. Misrepresentations of the character, amount or legal status of any debt, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the

FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

38. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

39. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

40. 15 U.S.C. § 1692e(3) specifically prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney."

41. 15 U.S.C. § 1692e(5) specifically prohibits: "the threat to take any action that cannot legally be taken or that is not intended to be taken."

42. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

10

43. 15 U.S.C. § 1692f generally prohibits any "unfair or unconscionable means to collect or attempt to collect a debt."

44. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

45. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

46. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

47. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

48. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

49. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See*

11

Case 2:20-cv-01410-LA   Filed 09/09/20   Page 11 of 15   Document 1

Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

50. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

51. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

52. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

53. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

54. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

55. Wis. Stat. § 427.104(1)(k) states that a debt collector may not: "Use a communication … which gives the appearance of being authorized, issued, or approved by a government, governmental agency or attorney-at-law when it is not."

56. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

57. Count I is brought against all Defendants.

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

59. Exhibit 1 falsely represents the degree of attorney involvement in the collection of the debt.

60. Exhibit 1 contains false, deceptive, misleading, and confusing representations about the rate of interest that was accruing when the account statement was mailed to Plaintiff and the amount of interest that Defendants were foregoing at the time they filed the Small Claims Collection Complaint.

61. Defendants violated 15 U.S.C. §§1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT II – WCA

62. Count II is brought against all Defendants.

63. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64. Exhibit 1 falsely represents the degree of attorney involvement in the collection of the debt.

65. Exhibit 1 contains false, deceptive, misleading, and confusing representations about the rate of interest that was accruing when the account statement was mailed to Plaintiff and the amount of interest that Defendants were foregoing at the time they filed the Small Claims Collection Complaint.

66. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), 427.104(1)(k), and 427.104(1)(L).

## CLASS ALLEGATIONS

67. Plaintiff brings this action on behalf of a Class, consisting of:

(a) all natural persons in the State of Wisconsin (b) against whom Gurstel filed a lawsuit on behalf of ARI, (c) in connection with an account that ARI purportedly purchased from First National Bank of Omaha, (d) appending an account statement as an Exhibit to the summons and complaint, (e) stating that "[e]ven if you make no more charges using this card, if you make only the minimum payment each month we estimate you will never pay off the balance shown on this statement because your payment will be less than the interest charged each month," (f) where the debt was incurred for personal, family, or household purposes, and (g) the lawsuit was filed between September 9, 2019 and September 9, 2020, inclusive.

68. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

69. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants violated the FDCPA and the WCA.

70. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

71. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

72. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

73. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 9, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com